UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
EDWIN ALVARADO,

                        Plaintiff,                  **OPINION AND ORDER**

    - v -

                                                        CV-04-2558 (NGG)(VVP)

CITY OF NEW YORK, et al.,

                        Defendants.
------------------------------------------------------x

       The plaintiff in this section 1983 case alleges claims of false arrest and malicious prosecution arising from his arrest and indictment on robbery charges which were ultimately dismissed before trial. As both claims rest on a showing that the defendants lacked probable cause, the plaintiff has moved to unseal the minutes of the grand jury proceedings which led to his indictment in order to obtain evidence to rebut the presumption of probable cause that arises from the indictment. *See Rothstein v. Carriere*, 373 F.3d 275, 282-83 (2nd Cir. 2004) *(citing Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)). For the reasons below the motion is denied.

## BACKGROUND

       The plaintiff was arrested and subsequently held for some nine months on charges that he participated in an attempted armed robbery of Juan Delgado and his son in August 2002. Delgado successfully resisted the two perpetrators, kicking one who struggled with him for the gold chain that was the object of the robbery, and later that same day identified the plaintiff as the one he kicked in a photographic array. Several days later, he picked the plaintiff out of another photo array, and four months later, in early December, Delgado picked the plaintiff out of a lineup. The plaintiff was arrested the same day of the lineup, and charged with attempted robbery and other crimes relating to the incident. Later in December, a Queens grand jury returned a five-count indictment against the plaintiff.

       The prosecution's case against the plaintiff appears to have rested almost entirely on the testimony of Delgado and his identification of the plaintiff. Among the defenses that the plaintiff articulated following his arrest was a contention that he had been wearing a cast at the time of the attempted robbery. He did not provide the prosecution with any evidence to support that

contention, however, until seven months later in July 2003 when his criminal attorney produced medical records showing that he had been treated at a hospital for a nondisplaced fracture of one of his forearm bones on July 14, 2002, about four weeks before the incident. The records also disclosed that five days before the incident the plaintiff had returned for repairs to a cast he was apparently wearing, and that he has no longer wearing a cast when he was seen again at the hospital on September 27, 2002. As the records did not disclose when the cast was removed, there was no clear evidence whether the plaintiff was wearing it on August 10 when the attempted robbery occurred. Nevertheless, because the plaintiff had witnesses who would testify that he was indeed wearing a cast at that time, and because Delgado had no recollection that either of his assailants was wearing a cast during the incident, the prosecution determined that there was little likelihood of a conviction and elected not to go to trial but rather to dismiss the charges against the plaintiff. The plaintiff himself was released from custody on September 12, 2003, and the charges were formally dismissed on October 9, 2003.

Several months later, the plaintiff commenced this action. In addition to the City of New York he has named as defendants Chris Bonomo, the detective in charge of the investigation that led to indictment, and Barry Pinto, the Assistant District Attorney in charge of the prosecution. The matter proceeded through discovery, including the depositions of Bonomo and Pinto, as well as the victim Juan Delgado. Long after discovery was concluded, and after the court had set a schedule for the defendants' summary judgment motion, the plaintiff received leave to seek unsealing orders or to serve subpoenas to obtain certified copies of transcripts of testimony apparently given by Bonomo before the grand jury and at a suppression hearing.[1] Order, Dec. 21, 1995. The plaintiff then petitioned the state court for leave to unseal the entire

---

[1] The plaintiff initially served requests for admissions asking the defendants to admit that transcripts of the testimony given by the detective on those occasions, both of which were marked as exhibits at his deposition, were accurate statements of his testimony. The record does not disclose whether the exhibits marked at the deposition were complete transcripts or only portions. When the defendants were unable to admit that they were accurate because the original records had been sealed, the court granted the plaintiff leave to serve a subpoena and seek unsealing orders to obtain certified copies of those records. Order, Dec. 21, 2005. When granting the order, the court did not consider the issues addressed here, *viz.*, whether unsealing of the grand jury minutes was appropriate in light of applicable grand jury secrecy laws and considerations of comity.

record of the criminal proceedings in state court, and the entire grand jury transcript.  By order dated February 27, 2006, the Supreme Court, Queens County, granted that part of the petition seeking the entire record of matters occurring before the trial court.  As to the grand jury minutes, however, the court granted the application only to the extent that the minutes were to be provided to the trial judge here immediately before the trial to permit their use solely for purposes of impeachment or to refresh a witness' recollection.

As the limited unsealing permitted by the state court order does not permit the plaintiff to use the minutes to resist the summary judgment motion intended by the defendants, the plaintiff has made the instant motion for an order by this court unsealing all of the grand jury minutes.[2]

## DISCUSSION

The parties agree that, although this court is not bound by state law protecting the secrecy of state grand jury proceedings, "a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy."  *Lora v. Board of Ed. of City of New York*, 74 F.R.D. 565, 576 (E.D.N.Y. 1977) (Weinstein, J.).  Thus, in evaluating applications to unseal state grand jury minutes, federal courts have required the same demonstration of "particularized need" required for the unsealing of federal grand jury minutes.  *See, e.g., Palmer v. Estate of Stuart*, Dkt. No. 02 Civ. 4076, 2004 WL 2429806, at *2 -3 (S.D.N.Y. Nov. 1, 2004); *Waterman v. City of New York*, Dkt. No. 96 Civ. 1471, 1998 WL 23219, at *1 -2 (S.D.N.Y. Jan. 13, 1998) *Scheiner v. Wallace*, Dkt. No. 93 Civ. 0062, 1995 WL 753931, at *5 (S.D.N.Y. Dec. 19, 1995).  To demonstrate particularized need the movant must show "that (a) the material sought is needed to avoid a possible injustice, (b) the need for disclosure is greater than the need for secrecy, and (c) the request is structured to cover only material so needed."  *Scheiner v. Wallace*, 1995 WL 753931, at *5 (quoting *Cullen v. Margiotta*, 811 F.2d 698, 715 (2d Cir.), *cert. denied*,

---

[2]The court notes in passing that the plaintiff's application here seeks material considerably broader than that authorized by the court's discovery order that led to this motion, which permitted the plaintiff to seek to unseal only the minutes of the detective's testimony before the grand jury, not the entire grand jury record.

483 U.S. 1021 (1987). The showing required is substantial. "A review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct." *United States v. Torres*, 901 F.2d 205, 233 (2nd Cir.), *cert. denied sub nom.*, *Cruz v. United States*, 498 U.S. 906 (1990).

In his papers in support of the motion, the only argument advanced by the plaintiff concerning his need for the material is a desire to sift through the grand jury minutes in order to obtain information that may help him defeat the defendants' summary judgment motion. See Plaintiff's Memorandum of Law In Support, Apr. 21, 2006 (hereinafter "Pl. Mem."), at 4. It is certainly true that, in malicious prosecution cases where a grand jury indictment has been returned, grand jury minutes may be needed to prove one's case. As the Second Circuit recently pointed out,

> "Once a suspect has been indicted ··· the law holds that the Grand Jury action creates a presumption of probable cause." . . . "The presumption may be overcome only by evidence establishing that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith." . . . Thus, in order for a plaintiff to succeed in a malicious prosecution claim after having been indicted, "he must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."

*Rothstein v. Carriere*, 373 F.3d 275, 282-83 (2nd Cir. 2004)(Gleeson, J.)(internal citations omitted). A generalized desire for discovery needed to prove one's case, however, does not constitute the requisite showing of particularized need. *See, e.g., Baker v. U.S. Steel Corp.*, 492 F.2d 1074, 1076 (2nd Cir. 1974); *In re Grand Jury Minutes*, No. 96 CV 2810, 1997 WL 21369, at *3 (E.D.N.Y. Jan. 9, 1997).

In an effort to show how the grand jury minutes might be relevant to his case, the plaintiff cites what he calls "discrepancies" in the identification evidence provided to the police by Delgado. In a police department complaint report concerning the incident, see Complaint Report, Aug.10, 2002, annexed as Ex. J to the Declaration of K.C. Okoli (hereinafter "Okoli Dec."), he points out that in the box entitled "Race" of the perpetrators there appears "Hisp/Wh" (meaning white Hispanic) whereas the plaintiff is a black Hispanic male. He further

-4-

notes that the complaint report is silent about the presence of facial hair and body marks, and apparently contends he had facial hair and marks on his face at the time of the incident.[3] Finally, he notes that the complaint report is silent about headgear, while Delgado testified in his deposition that the plaintiff's accomplice wore a hat.

Relying on these claimed discrepancies, the plaintiff asserts that "Defendants should have known that they did not have legally sufficient evidence to prove the guilt of the Plaintiff for this attempted robbery." Pl. Mem. at 11. What the defendants should have known, however, is irrelevant to the plaintiff's malicious prosecution claim, and therefore irrelevant to any need for the grand jury minutes. As noted above, once a defendant has been indicted the only way he can later prove a malicious prosecution claim is if he proves that the indictment was the product of fraud, perjury, suppression of evidence or other bad faith conduct by the police. *Rothstein v. Carriere*, 373 F.3d at 283. The subjective belief of the police about whether there is sufficient evidence to prove the guilt of the defendant beyond a reasonable doubt at trial is simply not part of the inquiry.

Equally unsupported in the plaintiff's papers is his assertion that "If the grand jury testimonies of the police witnesses and Complainant differ from the contents of the Complaint report and their deposition testimonies, that would be germane to the Plaintiff's claim for malicious prosecution." Pl. Mem. at 11. He makes no effort, however, to explain how it would be germane. During oral argument, the court suggested that the discrepancy between the complaint report notation that the perpetrators were "Hisp/Wh" and Delgado's ultimate identification of the plaintiff, who is apparently a dark-skinned Hispanic male, might provide support for a malicious prosecution claim based on a theory that the police withheld evidence from the grand jury about conflicting identification statements made by Delgado. If Bonomo knew that Delgado had given a description of his assailant that was substantially different from the appearance of the person he subsequently picked out of the photo arrays and later out of the lineup, it could be argued that his failure to pass that information on either to the assistant

---

[3]On this point the plaintiff cites to a document entitled Alvarado Declaration, see Pl. Mem. at 10. Although there are references to the Alvarado Declaration in the plaintiff's papers, the Declaration was not filed with the plaintiff's motion papers. See Docket Entry 59.

district attorney or to the grand jury would constitute a bad faith suppression of evidence that might have influenced the grand jury's probable cause determination. In such a circumstance, the grand jury minutes would be relevant to show that the grand jury was not told about the conflicting descriptions.

On the evidence here, however, there are at least two fatally significant flaws in the theory. First, there is no evidence that Delgado himself actually gave a conflicting description of the plaintiff. The plaintiff did not seek during discovery to establish how the "Hisp/Wh" notation on the complaint report came to be entered. He did not take the deposition of the preparer of the report, a civilian police department employee, to determine who provided the employee with the description that led the employee to enter "Hisp/Wh" for the race of the perpetrators. There is no evidence whatsoever to suggest that the employee ever spoke to Delgado.[4] Nor did the plaintiff take the deposition of the police officer who apparently spoke to Delgado after the incident and was therefore the likely source of the information that the civilian employee used to prepare the complaint report. Delgado himself testified at his deposition that he did *not* describe the perpetrator as white. See Delgado Dep., annexed as Ex. E. to Okoli Dec., at 97 ("I told him that he (sic) knew before couple times it's Hispanic guy, not white guy, Chinese guy, a black guy, Hispanic guy."). The detective, when questioned at his deposition, explained that "Detectives always come across mistakes or misprints either by the police officer taking the initial report or the civilian that enters the report into the system." Bonomo Dep., annexed as Ex. F to Okoli Dec., at 27. The mere appearance of "Hisp/Wh" on the complaint report is thus precious little evidence that Delgado ever made any statement in conflict with his identification of the plaintiff. In light of Delgado's subsequent identifications of the plaintiff in two photographic arrays and in a lineup, it is even less evidence that Bonomo sought in bad faith to suppress exculpatory evidence from the grand jury.

---

[4]The complaint report is typically prepared by a "PAA," a civilian police department employee based on information provided by a police officer who in turn has obtained information from the complainant. See Bonomo Dep., annexed as Ex. R to Okoli Dec., at 26-27. Since Bonomo entered the investigation after the complaint report was prepared, he had no involvement in any aspect of its preparation. *Id*. at 14.

Even assuming that Delgado initially described his assailant as a white Hispanic, the plaintiff has produced no evidence to suggest that Bonomo failed to provide the complaint report reflecting the "Hisp/Wh" notation to the assistant district attorney, and thus sought to prevent the grand jury from hearing about a possible conflicting description by the complainant. It is ultimately the prosecutor who chooses what evidence to put before the grand jury. *See, e.g., In re Grand Jury Minutes*, 1997 WL 21369, at *3. Thus, even if the grand jury minutes should disclose that the grand jury was not told about the "Hisp/Wh" notation in the complaint report, in the absence of any evidence to suggest that Bonomo hid the complaint report from the prosecutor, that failure to provide the grand jury with that evidence is not indicative of any bad faith intent by Bonomo to suppress evidence. And Pinto, the prosecutor, is himself absolutely immune from suit for his conduct before the grand jury. *See, e.g., Hill v. City of New York*, 45 F.3d 653, 662 (2nd Cir. 1995) (collecting cases); *accord, Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 996 (1976) (prosecutors have absolute immunity for acts "intimately associated with the judicial phase of the criminal process").[5]

For the foregoing reasons the plaintiff has not demonstrated that the grand jury minutes would afford him any evidence that would assist him in proving a claim of malicious prosecution, and therefore has failed to demonstrate a particularized need for unsealing the minutes. His motion is therefore denied.

**SO ORDERED:**

*Viktor V. Pohorelsky*

VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
August 5, 2006

---

[5] The other so-called "discrepancies" in the complaint report detailed by the plaintiff – the absence of any notations about facial hair, marks, and headgear – are no evidence of conflicting statements by the victim. Those blocks in the complaint report were simply left blank. See Complaint Report, annexed as Ex. J. to Okoli Dec. Absent any evidence about how the report was prepared, or why the blocks would have been left blank, that absence of information suggests nothing about what Delgado said or did not say about those matters, and provide no basis for any inference that Bonomo withheld any evidence from anyone.